# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | | |
|---|---|---|
| Christopher D. Braxton,<br>     Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:17cv340 (TSE/IDD) |
| | ) | |
| Director of Health Services, et al.,<br>     Defendants. | )<br>) | |

## MEMORANDUM OPINION

This matter comes before the Court on a Motion for Summary Judgment filed jointly by the defendants. Christopher D. Braxton, a Virginia inmate acting pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he suffered deliberate indifference to his serious medical needs at Greensville Correctional Center ("GCC") when appropriate actions were not taken with respect to his allergy to celery. For the reasons which follow, the Motion for Summary Judgment must be granted.

## I. Background

### A. Plaintiff's Allegations

In the initial complaint, which is the operative complaint in the lawsuit,[1] plaintiff states that he has suffered from "a multitude of seriously painful, life-threatening" food allergies since 2013, and he receives the Common Fare diet at GCC. Compl. ¶¶ 5, 7. Among the foods to which

---

[1] The initial complaint was screened upon filing pursuant to 28 U.S.C. §1915A(a), and in deference to Braxton's pro se status, an order was entered apprising him of apparent deficiencies and allowing him an opportunity to file a particularized and amended complaint. [Dkt. No. 2] Instead of doing so, Braxton filed a Motion for Reconsideration, arguing at some length that his claims against the defendants had been adequately pleaded. [Dkt. No. 3] As it was apparent at that juncture that plaintiff did not wish to avail himself of the opportunity to particularize and amend his allegations, the Motion for Reconsideration was granted as to the requirement that he do so, and the initial complaint was served on the defendants as written.

plaintiff is allergic is celery, and he contends that defendants were deliberately indifferent to that serious medical condition in two ways.

First, on January 8, 2014, Dr. Miranda at GCC submitted a consultation request for a radioallergosorbent ("RAST") test to determine if plaintiff was allergic to celery to Corizon Company, a "privately-owned medical contractor employed by the [Virginia Department of Corrections] to provide medical services and care for all prisoners." Compl. ¶ 6. The request was approved by Corizon's medical director on February 3, 2014, and on February 11 plaintiff underwent a blood test which he believed was a RAST for celery. On February 19, however, Dr. Miranda received a report stating that the laboratory had been unable to perform the test because Corizon's "prior authorization [was] required." Compl. ¶ 15.

On March 10, 2014, plaintiff again submitted to a blood test, and again a report was sent to Dr. Miranda stating that the test had not been performed because "authorization from Corizon is required." Compl. at 6. Plaintiff alleges "on information and belief" that Dr. Miranda sought authorization from Corizon for plaintiff to undergo a RAST for celery from January 2014 until June 2016, but defendant John Doe denied the requests on the ground that Corizon's policy is not to authorize RAST's for celery for prisoners. Braxton asserts that "said denials and said policy constitute deliberate indifference or reckless disregard under federal law." Compl. ¶ 20.

In the second component to his deliberate indifference claim, Braxton alleges that GCC medical staff provided Mr. Creque, GCC's Food Service Manager, with a copy of a diet order from Dr. Miranda regarding his celery allergy on April 2, 2014. Nonetheless, since that date Creque and his staff have continued to place celery on plaintiff's food trays. Compl. ¶29. Plaintiff filed informal complaints and grievances regarding the situation, and was told to take the celery off his tray and not to eat it. Compl. ¶¶ 30-31.

On March 2, 2016, after the grievance process had concluded unsuccessfully, plaintiff ate a meal from a food tray "minus the celery," and suffered an allergic reaction that consisted of "swelling of his face and throat, chest pain, breathing difficulty, unbearable itching, tightness around his waistline, wheals [sic] about his face, neck, chest, armpits, and groin," as well as "great fear that he was going to die." Compl. ¶ 34. During a medical examination that same day "food allergy blood testing" was ordered, but as before defendant John Doe denied authorization for such a test based on Corizon's policy. Compl. ¶¶ 35-36. The same scenario was repeated beginning on June 11 or 12, 2016, when plaintiff again consumed a meal "minus the celery," experienced an allergic reaction, and was denied a RAST test. Compl. ¶¶37-38.

On June 24, 2016, a medical provider at GCC discontinued the order for a RAST test for Braxton because Corizon and its representative refused to authorize it. Compl. ¶ 40.

The original named defendants were VDOC's Director of Health Services; Gregory Holloway, VDOC's Regional Administrator; Carolyn M. Parker, an Assistant Warden at GCC; Mr. Creque, GCC's Food Operations Manager; and the Corizon Company. Compl. at 2 -3. Also listed in the style of the complaint as a defendant was John Doe, an unknown employee of Corizon Company who allegedly denied the institutional health care providers' requests for a RAST test for plaintiff. Compl. ¶ 19. In an Order dated June 28, 2017, Braxton's claim against Corizon Company was dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. [Dkt. No. 2] In the same Order, Braxton was informed that service could not be ordered on defendant "John Doe" until Braxton provided the court with his or her identity and address. Doe has never been served, and because it is now clear that he was a Corizon employee

3

and hence not a state actor, he could not be liable to Braxton pursuant to § 1983.[2] West v.

Atkins, 487 U.S. 42 (1988). Accordingly, Braxton's claim against him will be dismissed

pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

Braxton makes the following specific claims against the remaining defendants:

> 3. Defendant Creque violated the Eighth Amendment
> buy placing celery on plaintiff's meal tray, and as a
> result plaintiff suffered allergic reactions to celery
> on March 2 and June 11, 2016.

> 4. Defendants Parker and Holloway intentionally
> failed to exercise their supervisory authority over
> defendant Creque to stop him from placing celery
> on plaintiff's meal tray.

> 5. Defendants Parker, Holloway and Director of
> Health Services Herrick failed to exercise their
> supervisory authority to ensure that he would
> receive a RAST for celery.

Compl. at 13 - 14. Plaintiff seeks an award of compensatory and punitive damages as well as

injunctive relief.

B. Proceedings

On May 19, 2018, defendants filed a Motion for Summary Judgment accompanied by a

supporting memorandum and exhibits, asserting that: (1) the claim against defendant Parker is

time-barred; (2) plaintiff fails to state an Eighth Amendment claim for which relief can be

granted against the remaining defendants; and (3) defendants are entitled to qualified immunity

as to plaintiff's claim for damages. [Dkt. No. 27 - 28] Defendants provided Braxton with the

notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) [Dkt.

---

[2]In the initial order, defendants John Doe and Director of Health Services were conflated.
Dkt. No. 2 at 3. It is now apparent that John Doe is or was an employee of the Corizon Company,
while the Director of Health Services (currently Steve Herrick) is employed by VDOC.

No. 29], and he timely filed a response to the Motion for Summary Judgment on September 11, 2018. [Dkt. No. 36] Accordingly, this matter is ripe for disposition.

## II. Facts

Defendants have supplied evidence which establishes the following uncontested material facts. On April 7, 2014, Braxton submitted a grievance complaining that a RAST test had been performed but had not been authorized for laboratory testing by Corizon. Def. Mem., Att. A, Parker Aff. ¶ 5. On April 29, Assistant Warden Parker issued a response determining the grievance to be unfounded. An investigation into Braxton's complaint had revealed that he had self-reported the reaction he experienced after eating celery. A member of the institutional medical staff had ordered a RAST test for celery, but the Regional Medical Director and the Medical Director determined that under the circumstances a RAST test would be of little value. Braxton's medical record was noted with a celery allergy, and he was issued a medical pass with an allergy alert. Id., Enc. A. Braxton appealed the Level I determination, and in a Level II response issued on May 16, 2014 the Health Services Director agreed that the grievance was unfounded. Id.

On March 16, 2015, Braxton submitted a grievance complaining that he had not been provided with a substitute food for celery on his Common Fare meal tray.[3] Assistant Warden Parker issued a Level I response on April 3, 2015, advising Braxton that because no substitutions are allowed on the Common Fare diet plan he should not eat any celery that might be served to him. Parker Aff. ¶ 5, Att. B. Braxton appealed the response, and on April 29, 2015 Regional

---

[3]The Common Fare diet was developed by VDOC to meet the religious dietary needs of many faiths and is offered only at select VDOC facilities. See Acoolla v. Angelone, 2006 WL 2548207 at *3 (W.D. Va. Sept. 1, 2006). Because it is "much more expensive" than normal prison fare, it is highly regulated, and menu alterations at the facility level generally are prohibited. Id.

Administrator Holloway issued a Level II response concurring that the grievance was unfounded. Id., Att. B.

Braxton submitted an additional grievance on July 7, 2016, stating that the medical contractor provider would not permit his blood to be screened to determine the specific food which caused his allergic reaction. Assistant Warden Parker issued a Level I response determining the grievance to be unfounded on August 3, 2016. During an investigation into the complaint, GCC's Director of Nursing advised that Braxton had been seen by medical staff on several occasions for a rash which Braxton himself had related to the consumption of celery. Lab testing was ordered on March 2 and 8, 2016, but Braxton refused to have the testing performed. Based on the medical contract provider's procedures, medical staff determined that no further testing was necessary, and Braxton was advised to avoid celery which he believed to be the cause of his allergic reactions. Parker Aff., ¶ 7, Att. C. Braxton appealed the Level I response, and Health Services Director Herrick issued a Level II response agreeing that the grievance was unfounded. Herrick noted that Braxton had been advised that his medical record reflected an allergy to celery and that he should avoid eating it. Further, Braxton was advised that the GCC physician was responsible for his medical care and for determining whether there was a clinical need for specific lab testing. Parker Aff., Att. A; Herrick Aff. ¶ 8.

Braxton filed a response to the defendants' summary judgment motion on September 11, 2018. While the response itself is not sworn or signed under penalty of perjury, it is supported by an affidavit in which Braxton makes his "declarations under the penalty of perjury." [Dkt. No. 36] In the affidavit, Braxton disputes defendants' assertion in paragraph 14 of their memorandum that he refused the lab testing that was ordered on March 2 and March 8, 2016. Braxton states that he was never informed that these tests were ordered, and that once he learned

that they had been recorded in his medical file by an unknown person he submitted informal complaints and grievances denying the refusals and requesting that they be removed from his file because they were "false." Braxton Aff. ¶ 3. GCC officials ignored his requests. Braxton points out that when he refuses medical treatment he is required to execute a Refusal of Medical Treatment form stating that he does not want the planned or scheduled treatment, and defendants have provided no such forms to support their assertions. Id.

Braxton admits that he wrote in one of his grievances that the had undergone a RAST for celery but it was a "mistake on [his] part." He explains that medical staff at GCC had led him to believe that a regular blood test to which he had consented was a RAST, when in fact it was only a "simple blood [sic] unrelated to a RAST for celery." Braxton Aff. ¶ 4.

As to defendants' statement that Regional Medical Director Dr. Rodgers and Medical Director Dr. Gore determined that a RAST test would be of little value, Braxton asserts that Drs. Gore and Miranda "repeatedly requested Dr. Rodgers['] authorization for [him] to undergo the RAST ... [and] the conclusion that a RAST for celery 'would be of little value' was made by Dr. Rodgers arbitrarily and capriciously, as neither he nor Dr. Gore had examine[d] [Braxton] before this conclusion was reached." Braxton Aff. ¶ 5.

### III. Analysis

A. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving

party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

B. Claim 5 is Time-Barred

Claim 5, in which Braxton asserts that defendants Parker and Director of Health Services violated his Eighth Amendment rights by failing to ensure that he would receive a RAST test for celery, is time-barred. There is no federal statute of limitations for § 1983 claims, but 42 U.S.C. § 1988(a) authorizes federal courts to borrow state limitations periods when not inconsistent with federal law. Owens v. Okure, 488 U.S. 235, 239 (1989). The Court in Okure held specifically

8

that "courts considering § 1983 claims should borrow the general or residual [state] statute for personal injury actions." Id. at 250; accord, Wilson v. Garcia, 471 U.S. 261, 280 (1985). Virginia has a two-year statute of limitations for personal injury claims pursuant to Virginia Code. § 8.01-243(A), which is the applicable limitations period for this action. See Shelton v. Angelone, 148 F. Supp. 2d 670, 677 (W.D. Va. 2001) ("[U]nder Wilson and Okure, the court must apply the two year limitation period set forth in § 8.01-243(A) to all § 1983 actions arising in Virginia, whether or not the plaintiff is confined in prison when he files the lawsuit."), aff'd, 49 F. App'x 451 (4th Cir. Oct. 30, 2002) (unpublished), cert. denied sub nom. Shelton v. Johnson, 538 U.S. 964 (2003). Accordingly, for a § 1983 claim arising in Virginia to be timely, it must brought within two years of the date the cause of action accrued.

Although the limitations period in § 1983 actions is borrowed from state law, "the question of when a cause of action accrues under ... § 1983 remains one of federal law." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). Causes of action accrue under federal law when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. (citing United States v. Kubrick, 444 U.S. 111, 122-24 (1979).

Here, Braxton complained in a regular grievance dated April 7, 2014, that he had undergone a RAST test but it had not been authorized for lab testing by the outside medical contractor. Defendant Parker determined the grievance to be unfounded on April 29, 2014, after an investigation determined that Braxton himself had reported that the allergic reaction occurred after he ate celery. Although a medical staff member had ordered the RAST test for celery, Medical Director Dr. Gore and Regional Medical Director Dr. Rodgers felt that under the circumstances it would be of little value. Braxton's record was marked with a celery allergy and

he was issued a medical pass with an allergy alert. Parker Aff. ¶ 5, Att. A. Braxton appealed the Level I response, and VDOC's former Health Services Director issued a Level II response on May 16, 2014 agreeing that the grievance was unfounded.[4]

Under these circumstances, any cause of action Braxton may have had stemming from the failure to ensure his receipt of a RAST test accrued by May 16, 2014. The complaint in this lawsuit was not filed until on or about March 24, 2017, almost three years later. Accordingly, the claim was filed well outside the applicable two-year limitations period. Braxton makes no argument in his Response to Motion for Summary Judgment [Dkt. No. 36] to counter defendants' argument that the claim is time-barred. Accordingly, defendants Parker and Director of Health Services are entitled to judgment as a matter of law as to Claim 5.

C. Claims 3 and 4 - No Eighth Amendment Violation

At this juncture, it is apparent that Braxton's claim that the defendants acted with deliberate indifference to his celery allergy and thereby violated his rights under the Eighth Amendment must fail. To do so, a plaintiff must show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). To establish a violation of the right to adequate medical care, a plaintiff must show (1) a medical need that objectively is sufficiently serious to warrant constitutional protection, and (2) behavior on the part of prison officials that amounted to deliberate indifference to that need. To satisfy the second prong, a showing of mere negligence or even malpractice is not sufficient; instead, the plaintiff must show that the defendant was deliberately indifferent "by either actual intent or reckless disregard." Estelle, 429

_____

[4]Defendant Steve Herrick, the current Director of Health Services for VDOC, did not assume that position until March 25, 2016. Dkt. No. 28, Herrick Aff. ¶ 1.

U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Braxton has failed to satisfy either of these criteria.

First, the sole condition to which Braxton points as a basis for his medical need is his allergy to celery. Generally speaking, a prison official cannot be found to be deliberately indifferent based solely on the failure to accommodate a food allergy, because the Constitution does not require such an accommodation. Prien v. Smith, 411 F. App'x 982, 984 (9th Cir. 2011); see also, Witschi v. No. Car. Dep't of Public Safety, 2014 WL 3735135, at *2 (W.D. N.C. 2014), appeal dismissed, (4th Cir. Sept. 17, 2014) (inmate's allergy to soy and oats did not constitute a serious medical need to support a cognizable Eighth Amendment claim); Joseph v. Mercer County Comm'rs, 2012 WL 6018125, at *13 (N.D. Ohio Dec. 3, 2012) (dismissing with prejudice Eighth Amendment claim based on plaintiff's allergy to peanuts); Blocker v. NSP CMS Medical Staff, 2011 WL 1321751, at *4 (D.N.J. Mar. 31, 2011) (inmate's allegations of allergy to eggs, soybeans, onions and tomatoes insufficient to support a cognizable claim of deliberate indifference). Here, then, Braxton's allergy to celery itself is not a sufficiently serious medical need to satisfy the first component of an Eighth Amendment claim based on inadequate medical care.[5]

_____

[5]The Fourth Circuit holds that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted). Thus, a food allergy may give rise to a serious medical need where it prevents an inmate from receiving a safe or nutritionally adequate diet. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (to prevail on an Eighth Amendment claim grounded on indifference to a food allergy, inmate must show that he was not provided with sufficient nourishment to sustain his health); Escalante v. Huffman, 2011 WL 3107751, at *9 (W.D.Va. July 26, 2011) (same). Here, Braxton does not allege, and nothing in the materials before the Court suggests, that the safety or nutritional adequacy of his diet is compromised by his celery allergy. See Sweeting v. Miller, 2015 WL 4773276, at *3 (W.D. Va. Aug. 12, 2015) ("[T]o survive summary judgment on the objective component of his claim, Sweeting must show that his food allergies prevented him from receiving

Braxton's claim also falters on the second component of a cognizable Eighth Amendment claim, because he has come forward with nothing to show or even to suggest that any defendant acted with subjective indifference to his celery allergy. The uncontroverted evidence now before the Court establishes that Braxton self-reported that he suffered an allergic reaction after eating celery, his record accordingly was marked with a celery allergy, and he was issued a medical pass with an allergy alert. Parker Aff. ¶ 5, Att. A. Medical officials at GCC also ordered a RAST test to confirm the celery allergy. Although the test ultimately was deemed not to be medically necessary, the fact that it was ordered belies any suggestion that GCC personnel were deliberately indifferent to Braxton's condition. Later, when Braxton sought medical attention for a rash he attributed to the consumption of celery, lab testing again was ordered on two occasions. Under the totality of these circumstances, no showing has been made that any defendant was deliberately indifferent to Braxton's allergy to celery.

To the extent that Braxton argues that the fact that he continues to be served celery occasionally on his Common Fare meal tray amounts to deliberate indifference, his position is not borne out by applicable authorities, which hold that "prisons are not required to serve a special diet if inmates can voluntarily refrain from eating offensive foods and maintain an adequate diet." McKenny v. Moore, 2009 WL 152652, at *2 (D.S.C. 2009). Although Braxton on two occasions in 2016 suffered an allergic reaction after eating a meal from food trays that had contained celery, he was seen in the medical department that same day, Compl. at 10 -11, and he reports no lasting or chronic effects stemming from those incidents.

Under the foregoing circumstances, the evidence before the Court fails to establish the existence of either of the elements necessary to support a finding of deliberate indifference as to

_____

safe or adequate nourishment.")

either component of Braxton's claim. Cf. Estelle, 429 U.S. at 105. Defendants thus are entitled to summary judgment on Braxton's claim that his rights under the Eighth Amendment were violated either by the failure to provide him with a RAST test to confirm his celery allergy, or by the occasional placement of celery on his food tray.

### D. Claim 4 - No Supervisory Liability

In Claim 4, Braxton argues that defendants Parker, Holloway and Herrick failed to exercise their supervisory authority over officials at GCC to ensure that he would receive a RAST test for his celery allergy. Essentially, he contends that these defendants responded unfavorably to his grievances and appeals seeking a RAST test by deeming them unfounded.

Supervisory officials may be held liable only in limited circumstances for constitutional injuries inflicted by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability is not premised on respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). To establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Here, because Braxton suffered no constitutional injury with respect to his celery allergy, as discussed above, it is readily apparent that the three defendants named in connection with this claim can have no supervisory liability to him.

13

Moreover, had Braxton sued these defendants for their own participation in the alleged violation of his Eighth Amendment rights, his claim would still fail. Defendants Parker, Holloway and Herrick are alleged to have wrongfully denied Braxton's various grievances, and it is well established that prison officials can have no liability for decisions made during the grievance process. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (no liability exists under § 1983 for a prison administrator's response to a grievance or appeal); Blount v. Phipps, 2013 WL 831684, at * 6 n. 12 ("Generally, prison officials are absolutely immune from liability stemming from their participation in the inmate grievance process."), citing Burst v. Mitchell, 589 F. Supp. 186, 192 (E.D.Va. 1984).

E. Qualified Immunity

Lastly, defendants assert the defense of qualified immunity. Because Braxton has failed to establish a violation of his rights under the Eighth Amendment, the Court need not address qualified immunity. See Shabazz v. Va. Dep't of Corr., 2013 WL 1098102, at *9 n. 20 (E.D. Va. Mar. 15, 2013); Long v. Beres, 2013 WL 139342, at *5 n. 14 (E.D. Va. Jan. 10, 2013).

## IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment must be granted, and judgment must be entered in their favor. An appropriate Order and judgment shall issue.

Entered this 19th day of November 2018.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge

14